UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

RICHARD A. SPANN-EL,

    Plaintiff,

    v.

IND. STATE OF, et al.,

    Defendants.

CAUSE NO. 3:22-CV-541-JD-MGG

OPINION AND ORDER

Richard A. Spann-El, a prisoner proceeding without a lawyer, moves for a preliminary injunction. (ECF 1.) He was granted leave to proceed on an Eighth Amendment claim against the Warden of Miami Correctional Facility ("MCF") in his official capacity for injunctive relief related his ongoing need for protection from other inmates.[1] (ECF 4.) His allegations were somewhat vague, but the court liberally construed them as alleging that he was previously assaulted by another inmate sometime in 2020, and that circumstances led him to file a request for protective custody approximately two months ago. (*Id.* at 2-3.) He claimed that he was placed in restrictive housing for approximately four or five days as a precaution, but was then released to general population, at which point he was assaulted by another inmate. (*Id.*) He expressed ongoing concerns for his safety and demanded an immediate transfer to

---

[1] Mr. Spann-El has incurred three or more strikes for filing frivolous lawsuits, but the court concluded that he satisfied the imminent danger exception in 28 U.S.C. § 1915(g). (ECF 4.)

another facility. (*Id.*) The court ordered a response from the Warden, which has now been received. (ECF 7.)

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). On the first prong, "the applicant need not show that [he] definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763 (quotation marks omitted). In assessing the merits, the court does not "accept [the plaintiff's] allegations as true, nor do[es] [it] give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v. Univ. of S. Indiana*, ---F.4th---, 2022 WL 3152596, at *3 (7th Cir. Aug. 8, 2022). Instead, the court must make an assessment of the merits as "they are likely to be decided after more complete discovery and litigation." *Id.* As to the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be

awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

Furthermore, mandatory preliminary injunctions—"those requiring an affirmative act by the defendant" like the one Mr. Spann-El seeks—are "cautiously viewed and sparingly issued." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). Additionally, in the prison context, the court's ability to grant injunctive relief is significantly circumscribed; any remedial injunctive relief "must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citations and internal quotation marks omitted); *see also Rasho v. Jeffreys*, 22 F.4th 703, 711-13 (7th Cir. 2022) (outlining the strict limitations on granting injunctive relief in the prison setting).

The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates" and to "protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). However, "prisons are dangerous places," as "[i]nmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). Therefore, a failure-to-protect claim cannot be predicated "merely on knowledge of general risks of violence in a detention facility." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005). Additionally, "the fact that an inmate sought and was denied protective custody is not dispositive of the fact that prison officials were therefore deliberately indifferent to his safety." *Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997).

Instead, the plaintiff must establish that "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010). This is a high standard. The plaintiff must show that the defendant "acted with the equivalent of criminal recklessness, in this context meaning they were actually aware of a substantial harm to [plaintiff's] health or safety, yet failed to take appropriate steps to protect him from the specific danger." *Klebanowski v. Sheahan*, 540 F.3d 633, 639-40 (7th Cir. 2008).

"[N]egligence, gross negligence, or even recklessness as the term is used in tort cases is not enough" to establish an Eighth Amendment violation. *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020). Nor does making a "mistake" or exercising "poor judgment" satisfy the deliberate indifference standard. *Giles v. Tobeck*, 895 F.3d 510, 514 (7th Cir. 2018). The plaintiff must demonstrate acts or omissions by the defendant that "cross the line from negligently enabling the attack to recklessly condoning it." *Id.*

The Warden's response and supporting documentation reflect that Mr. Spann-El was moved to the restrictive housing unit at MCF on July 13, 2022. (ECF 7-1 ¶ 4.) This is the most secure unit at MCF. (*Id.* ¶ 6.) Restrictive housing unit cells are all single-person cells, and inmates are escorted by staff at all times when they are out of their cells and are kept separate from other inmates. (*Id.* ¶ 5.) Additionally, staff at MCF have initiated the paperwork for Mr. Spann-El to be transferred to another facility. (*Id.* ¶ 7.) The Warden attests that Mr. Spann-El will remain in the restrictive housing unit until his transfer is completed. (*Id.*)

4

Mr. Spann-El did not file a reply to the Warden's response, but instead filed two more motions seeking an immediate transfer to another facility. (ECF 9, 10.) In these motions, he raises a host of issues outside the scope of this lawsuit, including his need for treatment for suicidal ideations and his need for a hotpot, fan, GTL tablet, and other personal items. (ECF 9 at 2-4.) Not only are these issues outside the scope of this lawsuit, but he has already raised these issues in separate lawsuits. *See Spann-El v. State of Indiana*, 3:22-CV-660-RLM-MGG (N.D. Ind. closed Aug. 17, 2022); *Spann-El v. State of Indiana*, 3:22-CV-450-JD-MGG (N.D. Ind. filed June 10, 2022). He has been told more than once that it is an abuse of the judicial process for him to raise duplicative claims in multiple cases. *See Lindell v. McCallum*, 352 F.3d 1107, 1109 (7th Cir. 2003).

He also raises a number of arguments pertaining to his status as a "member of the Moroccan Moorish Empire," which in his view entitles him to special rights and privileges and prevents the state from incarcerating him against his will. (ECF 10 at 3.) He has been told several times that such arguments are patently frivolous. *See Bey v. State*, 847 F.3d 559, 559–61 (7th Cir. 2017); *El v. AmeriCredit Financial Services, Inc.*, 710 F.3d 748, 750 (7th Cir. 2013).

He also asserts that he does not feel safe in his current housing assignment because he does not have an intercom and has to bang on his cell to get an officer's attention. (ECF 9 at 2.) He states that an inmate was recently found dead in his cell, apparently from suicide, although he does not elaborate on the circumstances. He further complains that officers do not always conduct 15 or 30 minute walk-throughs of the unit as required by prison policy. None of these assertions demonstrate a likelihood

5

that Mr. Spann-El is at risk of being harmed by other inmates. Since he is in his cell alone, the lack of an intercom or lack of 15-minute walk throughs by staff might be an inconvenience, requiring him to wait when he wants to get an officer's attention, but these conditions do not amount to a violation of his Eighth Amendment rights. He does not provide any details about the death of the other inmate, but the fact that another inmate committed suicide does not show that Mr. Spann-El is at risk of being attacked by other inmates.[2] He does not refute the Warden's statement that he and others in the unit are escorted by staff at all times when they are out of their cells and kept separate from other inmates. (ECF 7-1 ¶ 5.)

Based on the present record, the court concludes that the Warden is taking adequate steps to protect Mr. Spann-El from being harmed by other inmates. He has not demonstrated a likelihood of success on his claim that his Eighth Amendment rights are being violated, nor has he demonstrated that he will suffer irreparable injury if the court does not grant him an immediate transfer while this case is pending.

For these reasons, the plaintiff's motions for preliminary injunctive relief (ECF 1, 9, 10) are DENIED.

SO ORDERED on August 29, 2022

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[2] It appears he may have raised this assertion in connection with his claim that he is at risk of committing suicide, which he is litigating in another lawsuit. See *Spann-El*, 3:22-CV-450-JD-MGG.

6