UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

RICHARD A. SPANN-EL,

    Plaintiff,

    v.                                    CAUSE NO. 3:22-CV-541-JD-MGG

WARDEN,

    Defendant.

## OPINION AND ORDER

Richard A. Spann-El, a prisoner proceeding without a lawyer, separately moves for a preliminary injunction and a temporary restraining order related to his alleged need for protection from other inmates, and for reconsideration of the court's order denying his earlier request for a preliminary injunction.[1] (ECF 14, 19, 20.)

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary

---

[1] His third motion is labeled, "Motion to Amend Complaint & Motion to Reconsider Complaint Litigations or Response from August 29, 2022." (ECF 14.) The date he lists is the date of the order denying his earlier motion for a preliminary injunction. (ECF 12.) It is not clear how he is trying to "amend" his complaint, if at all, with this filing. He does not submit a proposed amended complaint and his filing is a hodge-podge of factual assertions, legal arguments, and attached documents related to a variety of issues. The court will construe the motion as one to reconsider, but this order does not preclude him from moving to amend his complaint. To do so, however, he must submit a proposed amended complaint that is a complete document and that is on the court's approved prisoner complaint form, which is available in his prison's law library. N.D. IND. L.R. 7-6 (requiring litigants without counsel to use clerk-supplied forms when available).

relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."[2] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

On the first prong, "the applicant need not show that [he] definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763 (quotation marks omitted). In assessing the merits, the court does not simply "accept [the plaintiff's] allegations as true, nor do[es] [it] give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v. Univ. of S. Indiana*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, the court must conduct an assessment of the merits as "they are likely to be decided after more complete discovery and litigation." *Id.*

On the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. Mandatory preliminary injunctions—"those requiring an affirmative act by the defendant"—are "cautiously viewed and sparingly issued." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). Additionally, in the prison context, the court's ability to grant injunctive relief is significantly circumscribed;

---

[2] To the extent he is requesting a temporary restraining order, this would require him to satisfy an even more demanding standard. He must provide "specific facts in an affidavit or verified complaint clearly showing that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." FED. R. CIV. P. 65(b)(1).

any remedial injunctive relief "must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citations and internal quotation marks omitted); *see also Rasho v. Jeffreys*, 22 F.4th 703, 711-13 (7th Cir. 2022) (outlining the strict limitations on granting injunctive relief under the Prison Litigation Reform Act).

Mr. Spann-El was granted leave to proceed on an Eighth Amendment claim against the Warden of Miami Correctional Facility ("MCF") in his official capacity for injunctive relief related his need for protection from other inmates.[3] (ECF 4.) He claimed that he requested protective custody around May 2022 after being threatened and was placed in restrictive housing for approximately four or five days as a precaution, but was then released to general population, at which point he was assaulted by another inmate. (*Id.*) He expressed ongoing concerns for his safety and demanded an immediate transfer to another facility. (*Id.*) The court construed his filing as requesting a preliminary injunction and ordered a response from the Warden. (ECF 4, 7.)

In a sworn affidavit, the Warden attested that Mr. Spann-El was moved to the restrictive housing unit at MCF on July 13, 2022, shortly after the complaint was filed. (ECF 7-1 ¶ 4.) This is the most secure unit at MCF. (*Id.* ¶ 6.) Restrictive housing unit cells are all single-person cells, and inmates are escorted by staff at all times when they are

---

[3] Mr. Spann-El has incurred three or more strikes for filing frivolous lawsuits, but the court concluded that he satisfied the imminent danger exception in 28 U.S.C. § 1915(g) with respect to his allegation of imminent harm. (ECF 4.)

out of their cells and are kept separate from other inmates. (*Id.* ¶ 5.) Additionally, the Warden attested that staff at MCF had started the paperwork for Mr. Spann-El to be transferred to another facility, and that he would remain in the restrictive housing unit until his transfer was completed. (*Id.* ¶ 7.) The Warden did not attest that he thought a transfer was necessary to protect Mr. Spann-El, but only that another facility would have "additional capabilities to meet [his] needs."[4] (*Id.*) In his present filings, Mr. Spann-El complains that the transfer is taking too long and that staff are "conspiring" against him to send him back to general population so that he can be killed by other inmates. (ECF 20 at 1-3.)

The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates" and to "protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). However, "prisons are dangerous places," as "[i]nmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). Therefore, a failure-to-protect claim cannot be predicated "merely on knowledge of general risks of violence in a detention facility." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005). Instead, the plaintiff must establish that "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to

---

[4] Mr. Spann-El states in several of his filings that MCF does not have a formal protective custody unit. The fact that he was placed in restrictive housing, which the Warden attests is the most secure unit at the facility, suggests that Mr. Spann-El's characterization is accurate.

4

prevent it." *Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010). The plaintiff must show that the defendant "acted with the equivalent of criminal recklessness, in this context meaning they were actually aware of a substantial harm to [plaintiff's] health or safety, yet failed to take appropriate steps to protect him from the specific danger." *Klebanowski v. Sheahan*, 540 F.3d 633, 639-40 (7th Cir. 2008).

It is evident from Mr. Spann-El's filings that he does not like the restrictive housing unit at MCF and wants an immediate transfer to another facility.[5] However, the Constitution does not entitle him to demand a transfer, and where best to house a prisoner is a matter on which prison officials are entitled to substantial deference. *See Meachum v. Fano*, 427 U.S. 215, 224 (1976); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (prisoner has "no due process right to the correctional facility of his choice"). Additionally, "[p]rison officials do not violate the Eight Amendment because the mode of protection they offer does not sit well with a prisoner. Rather, if they offer reasonable protection from the threat, they have done their duty." *Dale v. Poston*, 548 F.3d 563, 570 (7th Cir. 2008). The record reflects that reasonable steps are being taken to protect Mr. Spann-El from harm. He remains in MCF's most secure unit, where he is housed by himself and escorted by guards whenever he leaves his cell. (ECF 7-1 ¶¶ 4-6.)

---

[5] In one of his motions, he raises a host of issues outside the scope of this lawsuit, including his need for an electronic tablet, personal items, video visits with his family members, and other privileges. (ECF 19 at 2-4.) The court cannot grant him relief outside the scope of the claims he is proceeding on in this case, and additionally, he is precluded from asserting non-urgent claims without prepayment of the full filing fee because he has incurred three or more strikes for filing frivolous lawsuits. *See* 28 U.S.C. § 1915(g). The court declines to permit him to litigate these non-urgent issues through the backdoor in this case, in which he was permitted to proceed in forma pauperis due allegations triggering an imminent danger of serious physical injury. He also requests immediate release from custody (ECF 19 at 4; ECF 14 at 8), but he cannot obtain such relief in this civil rights case. *Glaus v. Anderson*, 408 F.3d 382, 387 (7th Cir. 2005).

There is no indication from his filings he is in danger in the restrictive housing unit; indeed, in one his motions he states: "Now finally I'm getting the protection I need & deserve." (ECF 14 at 6.) Although he would prefer to be at another facility and to have his transfer expedited, the court can only grant him injunctive relief to remedy an ongoing constitutional violation. *Westefer*, 682 F.3d at 681. The prison's failure to transfer him to a different facility immediately does not amount to a constitutional violation.

As for his speculation that he could be moved back to general population at MCF, the court denied his earlier motion based on the Warden's sworn statement that he would remain in the restrictive housing unit until being transferred. The court expects that if there is any change in circumstances warranting a different placement, the Warden will notify the court immediately, before a new placement is made. Based on the present motion, the court declines to grant him relief.

For these reasons, the plaintiff's motions (ECF 14, 19, 20) are DENIED.

SO ORDERED on October 12, 2022

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT