UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

RICHARD A. SPANN-EL,

Plaintiff,

v.

INDIANA STATE OF, et al.,

Defendants.

CAUSE NO. 3:22-CV-541-JD-MGG

OPINION AND ORDER

Richard A. Spann-El, a prisoner without a lawyer, filed an amended complaint under 42 U.S.C. § 1983. (ECF 39.) In the original screening order, he was granted leave to proceed on a claim for injunctive relief against the Warden of Miami Correctional Facility ("MCF") related to his ongoing need for protection from other inmates at MCF. (ECF 4.) After he was transferred to another correctional facility, his claim for injunctive relief against the Warden of MCF was dismissed as moot. (ECF 36.) He requested leave to amend his complaint to assert a claim for damages related to the alleged failure of prison staff to protect him from harm during the time he was incarcerated at MCF, and the court granted his request. (*Id.*) He then filed this amended complaint. (ECF 39.)

Under 28 U .S.C. § 1915A, the court must screen the amended complaint to determine whether it states a claim for relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Mr. Spann-El is proceeding without counsel, the court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Mr. Spann-El is currently incarcerated at New Castle Correctional Facility. His claims stem from events occurring at MCF between April and July 2022. He claims that in April 2022, he sought protective custody "due to means of being assaulted" by unspecified inmates while he was in "I" dormitory. He gave an unidentified correctional officer a "note" stating that he was suicidal and needed protective custody. He claims unnamed prison staff declined to put him in protective custody at that time and instead moved him to "L" dormitory. Around May 2022, he claims he was assaulted by inmates he does not name. He claims he was knocked unconscious and suffered "puncture wounds" to his hands and face.

Sometime around May 20, 2022, he was called to a meeting with a mental health specialist[1] and a correctional staff member he believes was Lieutenant Townsend (first name unknown). He does not elaborate, but states that "all issues were relayed to him that of me being brutally assaulted." He states that he submitted a protective custody form which was witnessed by Sergeant Baker (first name unknown), and copies of

---

[1] Mr. Spann-El has another case pending wherein he complains about the mental health treatment he received at MCF when he was allegedly suicidal during the summer of 2022. *See Spann-El v. Warden*, 3:22-CV-450-JD-MGG (N.D. Ind. filed June 10, 2022). It is considered "malicious" for him to use the in forma pauperis statute to file lawsuits containing duplicative claims. *See Lindell v. McCallum*, 352 F.3d 1107, 1109 (7th Cir. 2003); *see also Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993) (federal suit may be dismissed when it duplicates claims in another pending lawsuit). The court will presume that he did not intend to reassert claims about his mental health care or suicidal ideations in this lawsuit and merely included some of the same information for background.

which were given to Internal Affairs Investigators Carter, Heisman, and a third person

he identifies as "D.I.I. John Doe." (*Id.* at 3.) At that point he was moved to the

administration segregation unit.

Around May 30, 2022, he had another meeting with prison staff about his need

for protection, this time with a mental health specialist, Case Worker Stoll (first name

unknown), and the three Internal Affairs investigators. He states that he reported

"constant abuses that w[]ere occurring since February 2020." He does not elaborate,

other than to state that he had been labeled a "snitch" by unspecified inmates in "L"

dormitory. He claims he told staff at the meeting that he wanted to stay in

administrative segregation and ultimately to be moved to another prison. (*Id.*)

Approximately three days later, Lieutenant Myers (first name unknown) and

another officer arrived at his cell and told him to pack up his property. He claims he

told Lieutenant Myers "I am in fear for my life," and "I am not safe anywhere in

population," to which the Lieutenant allegedly responded that it was not his problem.

He claims that while in "P" dormitory, he was "threatened" in an unspecified manner

and "forced to hold inmates' knives." He states that someone threatened him at

knifepoint, although he does not state whether he was injured.

Around July 2, 2022, Unit Team Manager Dowier (first name unknown) noticed

that Mr. Spann-El had a "busted lip" and a black eye---the source of which he does not

clearly explain---and asked him "who did what" to him. He states that he did not

convey any information to UTM Dowier because he was scared. Instead he told him

that "it doesn't matter" because "no one would help [him] anyway." (*Id.* at 10.) Around July 7, 2022, he became "extremely paranoid" and, as best as can be discerned, conveyed some additional information to unknown prison staff. On that date he was given "some form of protective custody," and on an unspecified later date he was given "final protection." Based on these events, he sues Investigators Carter, Heisman, and Doe, Case Manager Stoll, Lieutenant Townsend, Sergeant Baker, Lieutenant Myers, UTM Dowier, and several "John Doe" officers. He seeks $10 million in damages, an apology, and other relief.

The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates" and to "protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). However, "prisons are dangerous places," as "[i]nmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). Therefore, a failure-to-protect claim cannot be predicated "merely on knowledge of general risks of violence in a detention facility." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005). Instead, the plaintiff must establish that "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010). This is a high standard. As the Seventh Circuit has explained:

> To establish deliberate indifference on the part of the defendants sued individually, [plaintiff] needed to show that the officers acted with the

> equivalent of criminal recklessness, in this context meaning they were actually aware of a substantial harm to [plaintiff's] health or safety, yet failed to take appropriate steps to protect him from the specific danger. [Plaintiff] testified during his deposition that he told officers twice . . . that he was afraid for his life and he wanted to be transferred off the tier. . . . This lack of specificity falls below the required notice an officer must have for liability to attach for deliberate indifference.

*Klebanowski v. Sheahan*, 540 F.3d 633, 639-40 (7th Cir. 2008) (internal citations and footnote omitted). The bare fact that an inmate was denied protective custody does not establish deliberate indifference. *Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997). Additionally, "negligence, gross negligence, or even recklessness as the term is used in tort cases is not enough" to establish an Eighth Amendment violation. *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020). Nor does making a "mistake" or exercising "poor judgment" satisfy the deliberate indifference standard. *Giles v. Tobeck*, 895 F.3d 510, 514 (7th Cir. 2018).

It is unfortunate that Mr. Spann-El suffered injuries at the hands of other inmates, but his allegations are too vague to state a plausible Eighth Amendment claim against any defendant. As to his original request for protective custody made in April 2022, he does not allege in plain terms whom he made the request to or what information he conveyed, other than that he wanted protective custody and was feeling suicidal. This is not sufficient to put anyone on actual notice of an impending harm. *Gevas v. McLaughlin*, 798 F.3d 475, 480–81 (7th Cir. 2015) ("Complaints that convey only a generalized, vague, or stale concern about one's safety typically will not support an inference that a prison official had actual knowledge that the prisoner was in danger.").

The fact that he was assaulted, by itself, does not mean a prison staff member can be held liable for deliberate indifference, nor does the mere fact that he wasn't granted protective custody at that time. *Klebanowski*, 540 F.3d at 639-40; *Lewis*, 107 F.3d at 553. Random acts of violence may demonstrate "the tragic realities of jail and prison life that detainees are often subject to," but they do not give rise to Eighth Amendment liability. *Grieveson*, 538 F.3d at 776–77. Although he asserts generally that he told staff he was in danger, merely "putting a few words on paper that, in the hands of an imaginative reader, might suggest that something has happened . . . that might be redressed by the law" is not enough to state a claim under federal pleading standards. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010). It can also be discerned from his allegations that his concerns were not ignored, as he was moved from "I" dormitory, where the attack occurred, to "L" dormitory.

His allegations reflect that after the second attack, Sergeant Banker, Lieutenant Townsend, and the three Internal Affairs investigators met with him about his concerns, gave him the necessary forms to formally request protective custody, and had him temporarily moved to administrative segregation. Again, he does not include specifics about what information he gave them or which inmates he warned them about for the court to plausibly infer deliberate indifference. It was not enough for him to state that he was "afraid for his life," that he was "not safe," or that he wanted to be moved. *Klebanowski*, 540 F.3d at 639-40.

It is also evident from his allegations that his concerns were not ignored; he was not sent back to "I" dormitory or "L" dormitory, where he claimed to have been labeled a "snitch," and was instead moved to a new area of the prison, the "P" dormitory. This placement proved to be problematic too, but he does not allege that the defendants had actual knowledge of an impending harm if he were to be moved to "P" dormitory. As the Seventh Circuit has explained:

> Some level of brutality . . . is inevitable no matter what the guards do. Worse: because violence is inevitable unless all prisoners are locked in their cells 24 hours a day and sedated (a "solution" posing constitutional problems of its own) it will always be possible to say that the guards "should have known" of the risk. Indeed they should, and do. Applied to a prison, the objective "should have known" formula of tort law approaches absolute liability, rather a long distance from the Supreme Court's standards in *Estelle* and its offspring.

*McGill v. Duckworth*, 944 F.2d 344, 348 (7th Cir. 1991), *abrogated on other grounds by Haley v. Gross*, 86 F.3d 630, 640 (7th Cir. 1996).

He also claims that Lieutenant Myers spoke rudely to him when he was moving him to "P" dormitory, allegedly telling him that his concerns were not his "problem." However, it is evident from his allegations that other prison staff made the decision about where he would be moved and that Lieutenant Myers was merely carrying out the order. Lieutenant Myers might have conveyed that message more professionally, but rude language does not amount to a constitutional violation. *See Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015). Nor by Mr. Spann-El's account did he give Lieutenant Myers specifics about why he was "not safe" or "in fear for [his] life" for the court to plausibly infer actual knowledge of an impending harm. *Klebanowski*, 540 F.3d at 639-40.

7

As to UTM Dowier, Mr. Spann-El's allegations make clear that this staff member saw that he had been injured and made inquiries to try to find out what happened. Mr. Spann-El also makes clear that he did not tell him anything. Although he faults UTM Dowier for not simply placing him in protective custody at that time, without information from Mr. Spann-El about a specific threat to his safety posed by some inmate or inmates, UTM Dowier cannot be held liable for an Eighth Amendment violation. *Klebanowski*, 540 F.3d at 639-40.

Therefore, Mr. Spann-El has not stated a plausible constitutional claim against any defendant.[2] In the interest of justice, the court will allow him one final opportunity to file an amended complaint if, after reviewing the court's order, he believes that he can state a plausible constitutional claim based on these events, consistent with the allegation he has already made under penalty of perjury. *See Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018); *Luevano v. Wal-Mart*, 722 F.3d 1014, 1024 (7th Cir. 2013).

For these reasons, the court:

(1) GRANTS the plaintiff until **April 28, 2023**, to file an amended complaint as outlined in this opinion; and

---

[2] The court notes that there is an additional problem with the "John Doe" defendants he has sued. Even if he could state a viable claim against these defendants, as a practical matter placeholder defendants cannot be served with process to bring them into this lawsuit. *See Rodriguez v. McCloughen*, 49 F.4th 1120, 1121 (7th Cir. 2022). Those defendants would have to be identified and served within the relevant limitations period and the deadline specified in Federal Rule of Civil Procedure 4(m). *Id.*

(2) CAUTIONS him that if he does not respond by the deadline, this case is subject to dismissal under 28 U.S.C. § 1915A because the current complaint does not state a plausible constitutional claim upon which relief can be granted.

SO ORDERED on March 30, 2023

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT